## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

ABIRA MEDICAL LABORATORIES, LLC
d/b/a GENESIS DIAGNOSTICS,

               Plaintiff,

vs.

BLUE CROSS & BLUE SHIELD OF RHODE
ISLAND,

               Defendant.

CASE NO. 1:24-cv-00475-JJM-PAS

## BLUE CROSS & BLUE SHIELD OF RHODE ISLAND'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Blue Cross & Blue Shield of Rhode Island ("BCBSRI") respectfully moves for entry of an Order dismissing Plaintiff's Complaint ("Complaint," ECF No. 1) with prejudice.

## I.  INTRODUCTION

This is one of *hundreds* of cases Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics ("Plaintiff") has filed against health plans across the country using the same factually anemic "cut-and-paste" complaint and seeking to recover money for testing services without any basis in fact or law. Many of these actions have been dismissed, and many others have motions to dismiss pending.[1]

---

[1] *See, e.g., Abira Med. Labs., LLC v. Blue Cross Blue Shield of Fla., Inc.*, No. 3:23-cv-1092-TJC-SJH, 2024 U.S. Dist. LEXIS 154275, at *15-16 (M.D. Fla. Aug. 28, 2024) (dismissing Plaintiff's materially identical claims against a similarly situated health plan for failing to sufficiently plead a claim upon which relief could be granted); *accord. Abira Med. Labs., LLC v. Wellmed Med. Mgmt., Inc.*, No. SA-24-CV-00578-XR, 2024 U.S. Dist. LEXIS 204966, at *16 (W.D. Tex. Nov. 12, 2024); *Abira Med. Labs., LLC v. BPA Bestlife Ben. Plan Adm'rs & their Affiliates*, Civil Action

Here, like all of these cases, Plaintiff alleges that it rendered unspecified testing services between 2016 and 2020 to members of unidentified health plans supposedly insured or administered by BCBSRI. The Complaint purports to assert a claim to recover benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), along with four state common-law causes of action.[2] For the reasons discussed below, the Complaint suffers from numerous fatal defects and should be dismissed in its entirety and with prejudice.

## II.    MATERIAL ALLEGATIONS

Plaintiff alleges it performed unspecified laboratory tests on dates between 2016 and 2020 that were submitted on behalf of unidentified "insureds/subscribers/members" of BCBSRI's health plans. ECF No. 1 at ¶¶ 8, 12, Ex. 1. Plaintiff alleges it is owed $1,758,484, excluding interest and costs, from BCBSRI. *Id.* at ¶ 1.

Plaintiff contends it can seek recovery of benefits that BCBSRI allegedly owes to its members because the members executed assignments of benefits in favor of Plaintiff. *Id.* at ¶¶ 9-10, 21, 33. Alternatively, Plaintiff contends it is entitled to bring the claims as a third-party

---

No. 24-00898 (GC) (RLS), 2024 U.S. Dist. LEXIS 197015, at *14 (D.N.J. Oct. 30, 2024); *Abira Med. Labs., LLC v. The Boon Grp., Inc.*, No. 1:24-cv-00589-DAE, 2024 U.S. Dist. LEXIS 189792, at *20 (W.D. Tex. Oct. 18, 2024); *Abria Med. Lab'ys, LLC v. CIGNA Health & Life Ins. Co.*, No. 3:23-cv-830 (VAB), 2024 U.S. Dist. LEXIS 176949, at *36 (D. Conn. Sep. 30, 2024); *Abira Med. Labs., LLC v. Mut. of Omaha Ins. Co.*, No. 8:24CV194, 2024 U.S. Dist. LEXIS 159436, at *62 (D. Neb. Sep. 5, 2024); *Abira Med. Labs., LLC v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 23-03866 (GC) (JBD), 2024 U.S. Dist. LEXIS 112412, at *15 (D.N.J. June 26, 2024); *Abira Med. Labs., LLC v. York Ins. Servs. Grp.*, Civil Action No. 23-03525 (GC) (TJB), 2024 U.S. Dist. LEXIS 95558, at *16-17 (D.N.J. May 29, 2024); *Abira Med. Labs., LLC v. Allied Ben. Sys., LLC,* Civil Action No. 23-04002 (GC) (TJB), 2024 U.S. Dist. LEXIS 95563, at *16-17 (D.N.J. May 29, 2024); *Abira Med. Labs., LLC v. Zurich Am. Ins. Co.*, Civil Action No. 23-03891 (GC) (DEA), 2024 U.S. Dist. LEXIS 95560, at *17 (D.N.J. May 29, 2024); *Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Ben. Plan*, Civil Action No. 23-05142 (GC) (DEA), 2024 U.S. Dist. LEXIS 79011, at *14-15 (D.N.J. Apr. 30, 2024).

[2] Plaintiff alleges the following five counts: (1) wrongful denial of ERISA Benefits; (2) breach of third-party beneficiary contract; (3) breach of third-party bad faith claims; (4) *quantum meruit* / unjust enrichment; and (5) negligence.

beneficiary of unidentified "insurance contracts" (*i.e.*, health plans) between BCBSRI and its members. *Id.* at ¶¶ 11, 34.

### III.    LEGAL STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a court properly grants a motion to dismiss when a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" FED. R. CIV. P. 12(b)(6); *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must treat well-pleaded factual allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" nor does it "consider 'naked assertions devoid of further factual enhancement.'" *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Twombly*, 550 U.S. at 557). As the U.S. Court of Appeals for the First Circuit and this Court have consistently explained, "[u]nder a Rule 12(b)(6) motion, 'a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic supposition.'" *Lawson v. Liburdi*, 114 F. Supp. 2d 31, 36 (D.R.I. 2000) (quoting *United States v. AVX Corp.*, 962 F,2d 108, 115 (1st Cir. 1992)). And, when dismissal is warranted, if "amending the complaint would be futile" then leave to amend should be denied. *Green v. Concord Baptist Church*, 313 F. App'x 335, 336 (1st Cir. 2009).

### IV.    ARGUMENT

#### A.  The Court Should Dismiss Plaintiff's Claims as Inadequately Pled.

Plaintiff's Complaint is filled with conclusory assertions but lacks sufficient factual content to put BCBSRI on notice of the claims asserted against it. Plaintiff entirely fails to identify a single

"insurance contract" or terms thereof that BCBSRI supposedly breached. This deficiency is fatal.

"[A]n offer and acceptance are indispensable to contract formation." *Andoscia v. Town of N. Smithfield*, 159 A.3d 79, 82 (R.I. 2017) (quoting *Haviland v. Simmons*, 45 A.3d 1246, 1257-58 2012). "The long-recognized essential elements of a contract are 'competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation.'" *Coccoli v. Town of Scituate Town Council*, 184 A.3d 1113, 1118 (R.I. 2018) (quoting *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996)). Moreover, "[a]n essential element to the formulation of any true contract is an intent to contract." *Read & Lundy, Inc. v. Wash. Tr. Co.*, 840 A.2d 1099, 1102 (R.I. 2004) (citation and quotation omitted).

Here, Plaintiff does not identify any specific contract between Plaintiff and BCBSRI. What Plaintiff defines as the "Contract(s)" supposedly between BCBSRI and Plaintiff are "the assignments of benefits executed by the insureds." ECF. No. 1 at ¶ 21. But these allegedly were contained in "requisitions of laboratory testing" forms submitted "on behalf of [the] insureds/members/subscribers" by these individuals' "medical service providers." *Id.* at ¶¶ 8-9. There are no allegations that BCBSRI even knew about the alleged assignments until Plaintiff supposedly submitted a post-service claim for reimbursement, and there are certainly no allegations that BCBSRI agreed to be bound by the supposed terms thereof that BCBSRI knew nothing about.

Thus, the alleged assignments cannot constitute a "[c]ontract" between BCBSRI and Plaintiff, as "[t]he long-recognized essential elements of a contract are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *Coccoli*, 184 A.3d at 1118 (citation and quotation omitted)). Simply, "[t]here must be a meeting of the minds" and an "intent to contract[,]" neither of which was the case for the alleged assignments submitted

by non-BCBSRI physicians on behalf of their patients. *Read & Lundy, Inc.*, 840 A.2d at 1102; *Donovan v. Freeway Constr. Co.*, 551 F. Supp. 869, 880 (D.R.I. 1982). What Plaintiff identifies here as the "Contract(s)" that BCBSRI allegedly breached are not contracts at all.

If any payment obligations existed as to BCBSRI, they would necessarily arise from the terms of the health plans allegedly assigned to Plaintiff. The problem for Plaintiff is that it discusses in passing "the insured's right to payment" under undefined health plans, but never alleges any health plan in particular or what the terms of those plans say about whether BCBSRI owes reimbursement for the types of testing services Plaintiff has not even bothered to define. *See* ECF No. 1 at ¶¶ 21, 33. This is insufficient under Rhode Island law. *See Pope v. City of Providence*, No. PB 13-3634, 2014 R.I. Super. LEXIS 68, at *14 (Super. Ct. May 15, 2014) (dismissing breach of contract claim where plaintiffs "broadly asserted that Defendants breached a contract" but "did not identify any contract that they purport to claim was breached" and, rather, merely sought "to avoid dismissal and conduct discovery to determine if there is any such contract"). As a result, BCBSRI is deprived of its right to fair notice of the grounds upon which Plaintiff's claims rest, such that it cannot prepare a defense to those claims based on the terms of the unidentified health plans at issue. *See Calvi v. Knox Cty.*, 470 F.3d 422, 430 (1st Cir. 2006) ("[T]he statement of claim must, at a bare minimum, give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (citation and quotation omitted)).

Strikingly, Plaintiff indicates it has never seen these "insurance contracts," meaning Plaintiff also has no factual basis to suggest that they have been breached or that they contain any provisions requiring BCBSRI to reimburse the unspecified types of out-of-network testing services that may be at issue here. *See* ECF No. 1 at ¶ 19. Despite alleging that each patient assigned "all rights and benefits under [their] health plan[,]" which would include a right to access plan

documents, Plaintiff does not allege that it ever exercised a modicum of due diligence by asking its patients or BCBSRI for copies of the plans at issue. *See id.* at ¶ 10.

For this reason, and the additional reasons set forth below, Plaintiff has failed to allege sufficient facts to put BCBSRI on notice of any cognizable claim.

### 1. *Plaintiff Fails to State a Claim for Wrongful Denial of ERISA Plan Benefits (Count I).*

Plaintiff's claim for wrongful denial of ERISA benefits (Count I) fails because Plaintiff has not identified the specific health plans or plan terms conferring a right to the benefits in question.

Plaintiff's ERISA claim is nothing more than factually unsupported speculation. When ruling on a 12(b)(6) motion to dismiss, "[t]he court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim…nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." *City of Warwick v. Laborers' Int'l Union of N. Am. Nat'l Pension Fund*, No. 08-366ML, 2009 U.S. Dist. LEXIS 14008, at *6 (D.R.I. Feb. 23, 2009) (quotation and citation omitted). Plainly, while a court accepts well-pleaded facts as true, courts in this Circuit are not required to accept "bald assertions" or "unsubstantiated conclusions." *Schofield v. United States Bank N.A.*, No. 11-170-M, 2012 U.S. Dist. LEXIS 101620, at *12 (D.R.I. July 23, 2012).

Plaintiff's allegations in Count I are just that – bald assertions and unsubstantiated conclusions – that the Court need not, and should not, accept. Plaintiff admits it has never seen the alleged health plans governing the disputed claims at issue when Plaintiff pleads that "[d]uring the claim process, Defendant nor Defendant's insureds/members/subscribers do not [sic] provide Defendant [sic] with a copy of the plan or policy documents." ECF No. 1 at ¶ 19. In other words, while Plaintiff pleads that "upon information and belief" the subject health plans are regulated by

ERISA, Plaintiff has absolutely no foundation for such "information and belief." Rather, Plaintiff's allegations amount to an unfounded, unsupported guess on the hopes that discovery might turn up some ERISA plans that Plaintiff does not currently know to exist. As the First Circuit has warned, "the price for entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings…Conclusory allegations in a complaint, if they stand alone, are a danger sign that plaintiff is engaged in a fishing expedition." *Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 16 (1st Cir. 2010) (emphasis in original) (citation omitted); *see also Texienne Physicians Med. Ass'n, PLLC v. Health Care Serv. Corp.*, No. 3:22-CV-0591-G, 2023 U.S. Dist. LEXIS 59743, at *14 (N.D. Tex. Apr. 4, 2023) (dismissing health provider's claim for ERISA benefits because the provider failed to identify the health care plans or policies that were allegedly breached or that it lacked access to the health care plans and facts that showed it made a "good-faith effort" to obtain the health insurance plans or policy documents but failed) (citing *Innova Hospital San Antonio, LP v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018)). [3]

In addition to not identifying any ERISA plans, Plaintiff's failure to identify any terms of those ERISA plans is equally fatal to Plaintiff's ERISA claim. ERISA's civil enforcement provision, 29 USC § 1132(a)(1)(B), authorizes suit by a plan participant "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." (emphasis added). Further, "[a]n action brought pursuant to this provision, essentially, is a breach of contract action, and in determining whether there has been a breach, the *terms of the plan* must be interpreted under principles of federal substantive law." *Corsini v. United Healthcare Servs.*, 145 F. Supp. 2d 184, 189 (D.R.I.

---

[3] *Accord. Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 550 F. Supp. 3d 799, 808-09 (D. Ariz. 2021).

2001) (citation and quotation omitted) (emphasis added).

Here, Plaintiff has not identified any plan – much less any plan that is ERISA-governed – or any specific terms of any ERISA plan entitling any BCBSRI member to benefits thereunder. Without such information, Plaintiff fails to plausibly plead that the terms of any plan have been breached. This leaves BCBSRI fundamentally without adequate information to defend against the claims Plaintiff has placed in dispute here.

Recently, the Middle District of Florida dismissed Plaintiff's ERISA claim involving nearly identical facts, reasoning in relevant part as follows:

> Although attempting to sue under ERISA, Abira provides no specific information. *See generally* Doc. 1. Abira does not identify how many of its patients participated in ERISA plans (or even that any did), the terms and conditions of any ERISA plan, what benefits are allegedly due under an ERISA plan, or whether Abira exhausted administrative remedies. *See id.* Abira alleges only that its patients assigned their unspecified benefits to Abira "via a standard form assignment of benefits clause" and that Blue Cross "has violated ERISA by failing to make payments of benefits to [Abira], as required under the terms and conditions of the Plan, made claims determinations in an arbitrary fashion, and failed to provide a full and fair review to [Abira] for the claims assigned to [Abira]." *Id.* ¶¶ 78, 80. Without ERISA-specific information, Abira fails to state a claim on which relief can be granted.

*Abira Med. Labs., LLC v. Blue Cross Blue Shield of Fla., Inc.*, No. 3:23-cv-1092-TJC-SJH, 2024 U.S. Dist. LEXIS 154275, at *13-14 (M.D. Fla. Aug. 28, 2024). Like in *Blue Cross Blue Shield of Fla.*, Plaintiff has failed to identify how many patients participated in ERISA plans, the terms and conditions of any ERISA plans, what benefits are due under any ERISA plans, or whether Plaintiff exhausted any administrative remedies, among other omissions. The result here should be the same, and the Court should dismiss Count I.

**2.  *Plaintiff's State Law Claims Fail as it is Impossible to Determine Whether They Are Preempted by ERISA (Counts II through V).***

The Court should dismiss Plaintiff's state law claims (Counts II through V) because Plaintiff fails to sufficiently plead which claims are ERISA claims, making it impossible to determine whether ERISA preempts the state law claims for some, all, or none of the underlying alleged testing claims.

"ERISA preemption is, as a general matter, expansive in scope." *Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 122 (1st Cir. 1995). ERISA expressly preempts "any and all" state law claims that "relate to any employee benefit plan" covered under the statute. *See id.* (quoting 29 U.S.C. § 1144(a)). "[A] state law 'relates to' an employee benefit plan 'if it has a connection with or reference to such a plan.'" *Id.* "[A] state law may 'relate to' an employee benefit plan and thereby be preempted, even if the law is not specifically designed to affect such plans, and even if its effect is indirect." *Id.*

Here, Plaintiff has failed to identify any ERISA plan, making it impossible for the Court and BCBSRI to discern the extent to which Plaintiff's state law claims are preempted. For that reason alone, Plaintiff has failed to state cognizable state law claims, and the Court should dismiss Counts II-V of the Complaint. *See*, *e.g.*, *Living Tree Labs., Inc. v. United Healthcare Servs.*, No. 16-cv-24680-GAYLES, 2018 U.S. Dist. LEXIS 52444, at *7-8 (S.D. Fla. Mar. 29, 2018) ("Plaintiff's failure to identify each patient's specific plan also mandates that the Court dismiss Plaintiff's remaining state law and declaratory relief claims without prejudice. The Court cannot discern whether the Claim Lines relate to an ERISA plan, such that Plaintiff's state law causes of action would be preempted, or whether any non-ERISA policies—if they exist—contain anti-assignment provisions.").

Plaintiff's state law claims also fail for additional, independent reasons.

### 3. *Plaintiff Fails to State Claims for Breach of a Third-Party Beneficiary Contract (Count II).*

To prevail on a breach of contract claim as a third-party beneficiary, a plaintiff must prove that: (1) an agreement existed to which plaintiff was not a party; (2) the defendant breached the agreement; (3) the breach caused damages to the plaintiff; and (4) the plaintiff is an intended, not incidental, beneficiary of the contract between contracting entities. *BHK Realty, LLC v. Narragansett Elec. Co.*, 542 F. Supp. 3d 133, 142-43 (D.R.I. 2021) (citing *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010), and *Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*, 199 A.3d 1034, 1039 (R.I. 2019)). Plaintiff has failed to plausibly allege these elements.

Specifically, Plaintiff bears the burden of showing that it is an "intended third party beneficiary." *See Glassie v. Doucette*, 157 A.3d, 1092, 1097 (R.I. 2017) (holding that a party claiming to be a third-party beneficiary "must prove that he or she is an intended beneficiary of the contract"). Under Rhode Island law, "only intended, and not incidental, third-party beneficiaries can maintain an action for damages resulting from a breach of a contract between two other contracting parties." *Forcier v. Cardello*, 173 B.R. 973, 984 (D.R.I. 1994) (citing *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990), and *Finch v. Rhode Island Grocers Association*, 175 A.2d 177, 184 (R.I. 1961)).

A party is an intended third-party beneficiary only when the contracting parties "directly and unequivocally inted[ed] to benefit [the] third party[.]" *Werner v. Stonebridge Life Ins. Co.*, No. 07-82S, 2007 U.S. Dist. LEXIS 65578, at *11 (D.R.I. June 19, 2007) (citing *Finch v. R.I. Grocers Ass'n*, 175 A.2d 177, 181 (R.I. 1961). To determine the intent of the parties, a court will look to the "actual language of the contract." *Forcier*, 173 B.R. at 985. Moreover, a "promisor's mere awareness that someone other than the promisee may derive a benefit from the promisor's performance under the contract is insufficient to cloak that third party with the mantle of intended

beneficiary." *Id.* at 986.

Here, Plaintiff does not allege any contractual language or representation by BCBSRI or the unidentified BCBSRI members that suggests either BCBSRI or its members "directly and unequivocally" intended the alleged "insurance contracts" to benefit Plaintiff. *See generally* ECF No. 1. Any suggestion that BCBSRI had "mere awareness" that non-contracted health care providers, like Plaintiff, would potentially benefit incidentally from the insurance contract is insufficient to allege that Plaintiff is an "intended beneficiary." *See Forcier*, 173 B.R. at 986.

To the extent Plaintiff alternatively argues that its claim is of a first-party variety because it alleges to have received assignments of benefits from the BCBSRI members, that theory also fails. Plaintiff attaches a 20-page purported claims list to the Complaint, including hundreds of supposed BCBSRI members, and alleges each of these members executed an assignment of benefits that included "similar language" to that excerpted in Paragraph 10 of the Complaint. *Id.* at ¶ 10, Ex. 1. These conclusory allegations fail to remedy Plaintiff's fundamental problem here – Plaintiff has not alleged the existence of a single health plan, the rights of which were supposedly assigned to Plaintiff, that would require BCBSRI to pay Plaintiff anything for the ill-defined services Plaintiff supposedly provided.

Put simply, the backbone of each of Plaintiff's claims as to each underlying patient is an untold number of unidentified "insurance contracts" between BCBSRI and members of its health plans. *See, e.g.,* ECF No. 1 at ¶¶ 9-13, 16, 19, 21-22, 24-28, 33-39, 42-47, 49, 57. Plaintiff, however, fails to allege the existence of any particular "insurance contracts," any specific health plan terms that entitle it to payment from BCBSRI, or any specific terms that BCBSRI supposedly breached. *See generally id*. Indeed, Plaintiff's allegations reveal it has never seen any of the subject health plans, and instead, it assumes the existence of such plans and unknown terms therein

entitling it to payment based on a mere hunch. *Id.* at ¶ 19 (alleging neither BCBSRI nor its members provided Plaintiff with plan copies).

Thus, because Plaintiff cannot plead that it was an intended third-party beneficiary to any health plans between BCBSRI and its members, Plaintiff's "breach of third part contract" claim fails. Moreover, even if Plaintiff relies on its conclusory allegations regarding supposed assignments, Plaintiff has failed to provide a shred of detail regarding the scope or extent of whether any assigned health plan terms entitle Plaintiff to reimbursement for unidentified tests rendered by a non-contracted provider without BCBSRI's knowledge. Accordingly, the Court should dismiss Count II.

### 4. *Plaintiff Fails to State a Claim for Common Law Third-Party Bad Faith (Count III).*

It is entirely unclear what Plaintiff tries to allege in Count III of the Complaint. This count is entitled "Breach of Third-Party Bad Faith Claims" but includes allegations potentially related to theories of common law bad faith, statutory bad faith, and breach of the implied covenant of good faith and fair dealing. *See* ECF No. 1 at ¶¶ 42-47. For example, Plaintiff says in Paragraph 42 that "The Contract"—which is unidentified—"constitutes a valid and binding agreement between Defendant and its insureds/members/subscribers[.]" *Id.* at ¶ 42. In Paragraphs 43 and 44, Plaintiff apparently attempts to assert a breach of the implied covenant of good faith and fair dealing claim. *Id.* at ¶¶ 43-44. Confusingly, Plaintiff then alleges that it "brings this common law bad faith claim directly against the Defendant." *Id.* at ¶ 45. The next two paragraphs then go back to referencing an unsupported breach of the covenant of good faith and fair dealing. *Id.* at ¶¶ 46-47. Nevertheless, regardless of what cause of action Plaintiff intended to plead, it has not, and cannot, state a claim for any variety of bad faith or breach of the duty of good faith and fair dealing.

First, "[i]t is well-settled in Rhode Island that … 'a claim for breach of the implied covenant

of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract." *Transamerica Life Ins. Co. v. Caramadre*, No. 09-470 S, 2017 U.S. Dist. LEXIS 27150, at *18 (D.R.I. Feb. 27, 2017) (quoting *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015)). As Plaintiff has failed to sufficiently plead the existence of any insurance contract, discussed above *supra* at 3-5, its claim for breach of the duty of good faith and fair dealing also necessarily fails. *See Transamerica Life Ins. Co.*, 2017 U.S. Dist. LEXIS 27150, at *18 (dismissing claim for breach of the duty of good faith and fair dealing based on absence of contractual relationship between parties); *see also Blue Cross Blue Shield of Florida*, 2024 U.S. Dist. LEXIS 154275, at *5 (dismissing Plaintiff's materially identical claim for breach of the duty of good faith and fair dealing against another insurer because Plaintiff failed to sufficiently allege a breach of contract).

Second, Plaintiff has not sufficiently alleged either a common law or statutory bad faith claim. As an initial matter, BCBSRI is statutorily designated as a "nonprofit hospital service corporation … and a nonprofit medical service corporation….  It is not an insurer within the meaning of [Rhode Island's bad faith statute,] § 9–1–33." *Richard v. Blue Cross & Blue Shield*, 604 A.2d 1260, 1262 (R.I. 1992).  Therefore, BCBSRI cannot be liable for statutory bad faith.

Moreover, Rhode Island courts generally apply the same analysis to evaluate both common law and statutory bad faith claims. *See Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1002, 1004 (R.I. 2002) (reasoning that G.L. 1956 § 9-1-33 is "the statutory codification of the tort of insurer bad faith"). Therefore, a common law bad faith claim cannot be maintained where a statutory bad faith claim fails. *See B.R.S. Real Est., Inc. v. Certain Underwriters at Lloyd's*, 682 F. Supp. 3d 204, 212 (D.R.I. 2023) (dismissing both statutory and common law bad faith claims).  "Under Rhode Island law, … a plaintiff first must show that he or she is entitled to recover on the contract before he or

she can prove that the insurer dealt with him or her in bad faith.'" *Id.* (quoting *Zarrella v. Minn. Mut. Life Ins. Co.*, 824 A.2d 1249, 1261 (R.I. 2003)); *see also Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1002, 1004 (R.I. 2002) ("[N]o action in bad faith can lie unless and until an insured has proven a breach of the insurance contract."). Because Plaintiff has failed to establish even the *existence* of a contract, it cannot maintain a claim for purported bad faith breach of contract.

Further, for a plaintiff to prove that an insurer dealt in bad faith, it "must demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim." *Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 200 (D.R.I. 2010) (citation and quotation omitted). "Rhode Island courts utilize the 'fairly debatable' inquiry, which precludes bad faith claims when the insurer disputes a 'claim that is fairly debatable.'" *Gminski v. Liberty Mut. Fire Ins. Co.*, No. 24-131 WES, 2024 U.S. Dist. LEXIS 123818, at *9 (D.R.I. July 15, 2024) (quoting *Imperial Cas. & Indem. Co. v. Bellini*, 947 A.2d 886, 893 (R.I. 2008)). "That test hinges on 'whether there is sufficient evidence from which reasonable minds could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.'" *Id.*

Considering these requirements at the pleading stage, this Court has dismissed claims for bad faith when the facts alleged are "conclusory, and the Complaint contains no factual allegations from which a reasonable fact-finder could conclude that Defendant denied this claim 'wrongfully and in bad faith.'" *Comfortably Numb Marine, LLC v. Markel Am. Ins. Co.*, No. 15-100ML, 2015 U.S. Dist. LEXIS 143196, at *10 (D.R.I. Sep. 23, 2015). In *Comfortably Numb Marine, LLC*, the insured plaintiff alleged that his insurer denied coverage and informed him that it was "unable to provide coverage for [his] claim as presented" because there was "no evidence" that the damage was caused by a covered occurrence. *Id.* at *2. The plaintiff further "assert[ed] in a conclusory

fashion that Defendant acted in bad faith because it 'denied coverage even though it has a duty to provide such and willfully engaged in and extended the investigations and negotiations regarding the [alleged covered] damage … for a period of fifteen months." *Id* at *11-12. This court dismissed the plaintiff's "bare bones" bad faith claim because the allegations were "conclusory" which showed "at most, a 'fairly debatable' claim which centers on a factual dispute." *Id.* at *10, 13. The Court reasoned that the plaintiff failed to "discuss the legal elements of a bad faith claim under Rhode Island law[,] … identify any factual allegations in the Complaint that would support a plausible bad faith claim[,] … [or] identify any facts suggesting that Defendant knew or had reckless disregard for undisputable evidence showing that the damage was a covered loss[.]" *Id.* at *12-13.

Here, Plaintiff has not "show[n] that [it] is entitled to recover on [a] contract[,]" which is a prerequisite to recovery for bad faith, as Plaintiff has not identified or adequately pled any contracts, much less shown that Plaintiff is entitled to recover under them. Additionally, the "bare bones" Complaint fails to sufficiently allege that BCBSRI dealt in bad faith because Plaintiff offers only conclusory allegations devoid of any factual support suggesting the requisite bad faith by BCBSRI for any of the hundreds of ill-defined testing claims in dispute. *See id.* at ¶¶ 45 ("Plaintiff, as an injured third party, who is assignee and considered to have stepped into the shoes of the Defendant's insureds/members/subscribers bring this common law bad faith claim directly against the Defendant."); 46 ("Defendant's actions here, including [sic] but not limited to, its failure and/or refusal to respond to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless, breached [sic] this implied covenant of good faith and fair dealing with respect to the contractual obligations that arose regarding the patients listed in

the attached Exhibit 1.").

Elsewhere, Plaintiff alleges in conclusory fashion that BCBSRI "improperly refused to pay (or underpaid) Plaintiff for services it rendered to numerous of Defendant's insureds, members and/or subscribers for numerous pretextual reasons, including purported, (a) lack of adequate claim information provided by Plaintiff; (b) untimely filing of claims; (c) lack of coverage by the subscribers/members for the services provided; and/or (d) failure to meet conditions of coverage. For the claims at issue in this matter, these purported bases for denial of coverage were entirely groundless and have deprived the Plaintiff of millions of dollars to which it was rightfully entitled to receive." *Id.* at ¶ 4. Of the hundreds of alleged underlying medical claims, Plaintiff makes no effort to plead facts suggesting why any denials or amounts paid by BCBSRI were "pretextual reasons" or the product of bad faith.

In short, the Complaint is of the "bare bones" variety dismissed in *Comfortably Numb Marine, LLC* in that it fails to allege facts to support the elements of a bad faith claim under Rhode Island law, fails to assert any specific factual allegations that demonstrate that any claim denial was made in the "absence of a reasonable basis in law or fact," and fails to allege any facts suggesting that BCBSRI knew or had reckless disregard for undisputable evidence showing that the claims were covered by the unidentified "insurance contracts." *See generally* ECF No. 1.

Accordingly, the Court should dismiss Count III with prejudice.

### 5. *Plaintiff Fails to State a Claim for Quantum Meruit/Unjust Enrichment (Count IV).[4]*

Plaintiff fails to allege facts supporting the essential elements of a *quantum meruit*/unjust

---

[4] Plaintiff's claim is barred if the Court finds that Plaintiff has adequately alleged a contract between Plaintiff and BCBSRI. *See Nash v. GMAC Mortg.*, LLC, No. CA 10-493 S, 2011 U.S. Dist. LEXIS 142081, at *40 (D.R.I. May 18, 2011) ("[i]t is well settled that where there is an express contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject matter." (citation omitted)).

enrichment claim. Although *quantum meruit* and unjust enrichment are "distinct causes of action" this Court has generally analyzed the two claims "together" because "under Rhode Island law the elements of *quantum meruit* and unjust enrichment are 'identical.'" *Prime Healthcare Servs. v. CIGNA Health & Life Ins. Co.*, No. 1:23-CV-00131-MSM-PAS, 2024 U.S. Dist. LEXIS 16785, at *10 (D.R.I. Jan. 31, 2024) (emphasis added). To state either claim, Plaintiff must allege that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof." *Id.* (quoting *Process Eng'rs & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1053 (R.I. 2014)).

This Court has reached differing conclusions on the legal question of whether the benefit conferred under the first element must be a *direct* benefit from the plaintiff to the defendant. *Compare J.P. Morgan Chase Bank, N.A. v. M/Y Brittany Leigh II*, No. 11-246ML, 2011 U.S. Dist. LEXIS 105069, at *7 (D.R.I. Aug. 23, 2011) (dismissing an unjust enrichment claim because plaintiff did not "directly confer" a benefit upon the defendant), *with In re Loestrin 24 Fe Antitrust Litig.*, 410 F. Supp. 3d 352, 383 (D.R.I. 2019) ("With respect to Rhode Island, Washington, and Wyoming, the Court similarly concludes that the laws of these states do not require a direct benefit be conferred in order for a party to plead a claim for unjust enrichment."). But numerous courts across the country have held that a medical provider does not confer a benefit upon an insurer when it provides treatment to an insured patient, including in cases involving Plaintiff. *See, e.g., Abira Med. Labs., LLC v. Blue Cross Blue Shield of Fla., Inc.*, No. 3:23-cv-1092-TJC-SJH, 2024 U.S. Dist. LEXIS 154275, at *9 (M.D. Fla. Aug. 28, 2024) (dismissing Plaintiff's materially identical unjust enrichment claim against another health plan and explaining that "[b]y treating an insured, a medical provider confers a benefit on the insured. The insurer's only role is to pay the

claim, if the claim is covered under the insured's policy. The benefit to the insurer when an insured receives a service from a provider—if such a benefit exists—is indirect and cannot underlie a claim for unjust enrichment.").[5]

Even if Plaintiff is not required to allege the *direct* conferral of a benefit, however, Plaintiff's claim still fails because it has not identified a single "insurance contract" under which BCBSRI received or unjustly retained any benefit. The U.S. District Court for the District of New Jersey has, in two recent cases involving Plaintiff, dismissed claims for *quantum meruit* / unjust enrichment against similarly situated defendants under nearly identical facts for this reason. *Nat'l Ass'n of Letter Carriers Health Ben. Plan*, 2024 U.S. Dist. LEXIS 79011, at *11-12; *State Farm Mut. Auto. Ins. Co.*, 2024 U.S. Dist. LEXIS 112412, at *12-13. Those decisions were well reasoned and based on materially identical factual allegations.

---

[5] *See also BCBSM, Inc. v. GS Labs, LLC,* No. 22-cv-513 (ECT/DJF), 2023 U.S. Dist. LEXIS 15593, at *18 (D. Minn. Jan. 30, 2023) ("A vendor's provision of services to an insured ordinarily does not enrich the insured's insurer. The patient—not the insurer—receives the services' benefits."); *Dependable Nurses of Phx. LLC v. Cigna Healthcare Inc.*, No. CV-20-01877-PHX-SPL, 2021 U.S. Dist. LEXIS 262094, at *17 (D. Ariz. Feb. 2, 2021) ("When there is an opportunity to recover from a third party, in this case the patients themselves, there is no 'inequity' to the plaintiff provider, a crucial element of unjust enrichment."); *Comprehensive Spine Care P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 U.S. Dist. LEXIS 207782, at *18 (D.N.J. Dec. 10, 2018) ("[A]ny benefit conferred by [the plaintiff's] performance of the surgical procedure benefits [the patient], not [the defendant insurer.]"); *Armijo v. ILWU-PMA Welfare Plan,* 2015 U.S. Dist. LEXIS 192447, 2015 WL 13629562, at *24 (C.D. Cal. Aug. 21, 2015) ("[S]ervices provided by medical providers to patients do not inure to the benefit of insurers."); *Encompass Office Sols., Inc. v. Ingenix, Inc.,* 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Even if United received some benefit as a result of Encompass providing medical services to its insureds, a proposition the court finds dubious, Encompass's services were rendered to and for its patients, not United."); *Adventist Health System/Sunbelt Inc. v. Medical Sav. Ins. Co.,* No. 6:03-CV-1121, 2004 U.S. Dist. LEXIS 30976, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) (dismissing provider's unjust enrichment claim because "as matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies"); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.,* 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.").

First, in *National Association of Letter Carriers* the court dismissed Plaintiff's unjust enrichment claim as it held that Plaintiff failed to sufficiently plead that it conferred a benefit – direct or otherwise – upon the defendant health insurer by allegedly rendering testing services to the health plans members. *Nat'l Ass'n of Letter Carriers Health Ben. Plan*, 2024 U.S. Dist. LEXIS 79011, at *11-12. The court acknowledged that whether providing medical services to a patient confers a benefit on his or her health plan is an unsettled area of law in the Third Circuit. *Id.* at *12. Nonetheless, the court explained "even accepting that an unjust enrichment claim could be maintained against Defendant, Plaintiff has not adequately pleaded its claim because its allegations do not plausibly establish that a plan exists under which Defendant 'received a benefit.' Notably, Plaintiff does not identify any of Defendant's insureds, does not identify what duties Defendant owed to its insureds under the specific terms of any plan, and does not plead allegations that allow this Court to infer that Defendant unjustly retained a benefit under any plan without payment." *Id.*

Similarly, in *State Farm*, the court again dismissed Plaintiff's unjust enrichment claim under nearly identical facts noting that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *State Farm Mut. Auto. Ins. Co.*, 2024 U.S. Dist. LEXIS 112412, at *12. Thus, the court reasoned that for a healthcare provider to bring an unjust enrichment claim, the provider must plausibly establish that a plan exists. *Id.* at *13. The court held that Plaintiff had not adequately pled its claim because its allegations did not plausibly establish that a plan existed under which Defendant "received a benefit." *Id.* The court explained that "[n]otably, Plaintiff does not identify any of Defendant's insureds, does not identify what duties Defendant owed to the insureds under the specific terms of

any plan, and does not plead allegations that allow this Court to infer that Defendant unjustly retained a benefit under any plan without payment." *Id.*

Here, Plaintiff merely alleges that "Defendant enriched itself at Plaintiff's expense by failing and refusing to compensate Plaintiff for providing Laboratory Testing Services to Defendant's subscribers and/or members, it is against equity and good conscience to permit Defendant to retain the money it intentionally and wrongfully failed to pay to Plaintiff." ECF No. 1 at ¶ 51. This allegation is insufficient to demonstrate that any benefit, much less a direct benefit, was conferred on BCBSRI. Nonetheless, even assuming that the allegations somehow amount to a benefit conferred upon BCBSRI's "insureds/claimants," they certainly fail because Plaintiff has not plausibly alleged the existence of the benefit plans and the supposedly discharged obligations thereunder from which BCBSRI unjustly retained any benefit. Specifically, Plaintiff has not identified a single health plan obligating BCBSRI to pay Plaintiff anything, and accordingly, Plaintiff has failed to plead that BCBSRI benefited from the discharge of such unidentified and speculative obligations.

This Court should dismiss Count IV with prejudice.

### 6. *Plaintiff Fails to State a Tort Claim for Negligence (Count V)*

Plaintiff's negligence claim (Count V) is barred by the economic loss doctrine. Under Rhode Island law, "[t]he economic loss doctrine…prohibits parties who 'have contracted to protect against potential economic liability' from recovering 'purely economic damages' in tort." *W. Reserve Life Assurance Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270, 289 (D.R.I. 2010). This Court has repeatedly held that the doctrine bars a contracting party from asserting a negligence claim. *Gartner Tex. Props., LLC v. JPS Constr. & Design, Inc.*, 516 F. Supp. 3d 173, 177 (D.R.I. 2021) (citing *Frnklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007)). Relatedly, under

the economic loss doctrine, a "plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage." *BHK Realty, LLC v. Narragansett Elec. Co.*, 542 F. Supp. 3d 133, 139 (D.R.I. 2021) (quoting *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275-76 (R.I. 2007)); *see also Owen Bldg. LLC*, 2021 U.S. Dist. LEXIS 22786, at *5.

Plaintiff has not alleged any legal duty owed to by BCBSRI other than that which would have arisen from the unidentified "insurance contracts." Plaintiff cites the same factual allegations as support for its negligence claim as it does for its breach of contract claim. *See, e.g.,* ECF No. 1 at ¶¶ 38 ("Defendant repeatedly breached the Contract by either failing to respond at all to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless."), 59 ("Defendant breached its duty of care through its actions, including but not limited to, its failure and/or refusal to respond to properly submitted claims or, for those claims in which Defendant did choose to respond, regularly refused to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless…."). Aside from a duty imposed by an alleged contract, Plaintiff has not alleged any other basis for a legal duty owed by BCBSRI to Plaintiff, and its negligence claim fails. *See generally id.* Nor has Plaintiff pled that it suffered any personal injury or property damage. Thus, Plaintiff has failed to sufficiently plead a negligence claim under Rhode Island law, and the Court should dismiss Count V with prejudice.

## V.     CONCLUSION

For the forementioned reasons, BCBSRI respectfully requests that this Court grant its Motion and Dismiss Plaintiff's Complaint and dismiss the Complaint in its entirety.

Respectfully submitted,

/s/  Michael J. Daly

**PIERCE ATWOOD LLP**
Michael J. Daly (I.D. No. 6729)
One Citizens Plaza, 10th Floor
Providence, RI 02903
Phone: 401-490-3424
mdaly@pierceatwood.com

-   and   -

**REED SMITH LLP**
William J. Sheridan (admitted *Pro Hac Vice*)
225 Fifth Avenue
Pittsburgh, PA 15222
Phone: 412-288-3131
Fax: 412-288-3063
wsheridan@reedsmith.com

Zachary B. Kizitaff (admitted *Pro Hac Vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
Phone: 215-851-8100
Fax: 215-851-1420
zkizitaff@reedsmith.com

Dated: January 10, 2025

*Attorneys for Defendant Blue Cross & Blue Shield of Rhode Island*