# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS, Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | C.A. No. 24-cv-475-MRD-PAS |
| BLUE CROSS BLUE SHIELD OF RHODE ISLAND, Defendant. | ) ) ) ) ) | |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is Defendant Blue Cross Blue Shield of Rhode Island's ("BCBSRI"), Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  ECF No. 16. The Complaint filed by Plaintiff, Abira Medical Laboratories LLC d/b/a Genesis Diagnostics ("Abira"), asserts a claim under the Employee Retirement Income Security Act of 1974 ("ERISA") (Count I), breach of third-party beneficiary contract (Count II), breach of third-party bad faith claims (Count III), quantum meruit/unjust enrichment (Count IV), and negligence (Count V).  ECF No. 1.

BCBSRI argues that the Complaint is deficient because Abira fails to identify any insurance contract or specific contract provision that entitles it to reimbursement for services rendered.  Abira counters that it has asserted a valid assignment of benefits, provided enough information in "Exhibit 1" attached to its Complaint, and suggested it could not provide the contracts/health plans because they are within BCBSRI's control.  The insurance contracts at issue are purportedly between BCBSRI

and their insureds and govern the parties' obligations under the contract, including whether BCBSRI had any obligations to reimburse third-party service providers for services rendered.

For the reasons explained in detailed below, this Court GRANTS the Amended Motion to Dismiss.

## I.    BACKGROUND

### A. Factual Background

The following facts are as alleged in Abira's Complaint. Abira operates a licensed medical testing laboratory that performs clinical laboratory, pharmacy, genetics, addiction rehabilitation, and other testing services on specimens submitted by medical service providers. *Compl.* ¶ 8; ECF No. 1. This testing is done on behalf of patients across the country, including some who are insured by BCBSRI. *Id.* Abira believes the insureds obtained insurance policies through their respective employers who participated in group health insurance plans and offered said plans to their employees. *Id.* ¶ 19. These employer-sponsored policies are employee benefit plans that are regulated by ERISA. *Id.* ¶ 20.

The requisitions for laboratory testing submitted on behalf of the patients contained assignments of benefits. *Id.* ¶ 9. Abira relies on the assignment of benefits clauses as creating a binding contractual obligation on BCBSRI to pay for Abira. *Id.* The assignment of benefits states:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as

> my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws. If my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.

*Id.* ¶ 10. In situations where the insureds did not execute requisitions with this assignment of benefits clause, Abira suggests that the insurance contracts between BCBSRI and its insured were intended to benefit Abira as a third-party medical provider. *Id.* ¶ 11.

Attached to the Complaint as Exhibit 1 is a spreadsheet that includes the patients to whom laboratory testing services were rendered along with dates of service, amounts billed, ascension numbers, and other information. *Id.* ¶ 12; ECF No. 1-1. Abira performed services for each of these individuals and submitted claims for payment to BCBSRI. *Id.* ¶¶ 12-13. According to Abira, BCBSRI failed to respond at all to properly submitted claims, fabricated pretextual reasons to refuse payment, and underpaid other claims. *Id.* ¶¶ 14, 28. BCBSRI explained to Abira that the payments were denied due to a lack of adequate claim information provided by Abira, untimely filing of claims, and lack of coverage by the insured for the services provided. *Id.* ¶ 15. Abira claims that BCBSRI owes it over $1,758,484.00. *Id.* ¶ 1.

## B. Procedural Background

BCBSRI moved to dismiss Abira's Complaint on January 10, 2025 to which Abira responded on January 24, 2025. ECF Nos. 9, 10. After reviewing those filings,

the Court scheduled a conference with the parties to discuss whether they would be willing to exchange health plans and data for a sample of Plaintiff's benefits claims since they are central to Abira's Complaint. This process proved to be futile as Abira ignored BCBSRI's attempts to engage in this document exchange. *See* ECF No. 16 (BCBSRI detailing the procedural history and its attempts to engage Abira in document exchange). As a result, the Court abandoned this course and allowed BCBSRI to file an Amended Motion to Dismiss, which it did on September 26, 2025. On January 22, 2026, the Court heard arguments on the Amended Motion to Dismiss.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the Court must draw all reasonable inferences in the plaintiff's favor, and determine whether the Complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. *Clorox Co. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 30 (1st Cir. 2000); *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998).

## III.  DISCUSSION

In the Amended Motion to Dismiss, BCBSRI argues for dismissal on several grounds, some of which were not raised in its initial motion to dismiss. ECF No. 16. In addition to attacking each claim on the merits, BCBSRI now argues that Abira's claims are barred by anti-assignment provisions that are standard in every BCBSRI health plan and that the claims are time-barred.  ECF No. 16 at 6–11.  To consider these two arguments, the Court first needs to determine whether it can rely on the seven sample health plans containing the anti-assignment provisions and the Declaration of Avital Chatto, Vice President and Deputy General Counsel at BCBSRI, that BCBSRI attached to its motion.  ECF No. 16-1.  Abira suggests it is improper for the Court to consider the sample health plans, and that the claims are not barred by the anti-assignment provision or time-barred by the four-year contractual limitation contained in the sample plans.  ECF No. 18 at 9–15.  The Court will first address these threshold arguments before moving on to BCBSRI's arguments in support of dismissing Counts I-V.

### A.    Sample Health Plans

To start, Abira argues that this Court may not rely on the sample health plans without converting this motion to dismiss into a motion for summary judgment.  *See* ECF No. 18 at 9–10 (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).  It also argues that it is improper to consider and apply the terms of a "sample" health plan to each claim listed in Exhibit 1 to the Complaint.  ECF No. 18 at 11.  Meanwhile, BCBSRI argues that this Court can and should consider the health plans in

evaluating this motion because the Complaint's "factual allegations are expressly linked to—and admittedly dependent upon— [the health plans] (the authenticity of which is not challenged)." ECF No. 16 at 5 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).

Typically, when a Court is assessing a motion to dismiss "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment." *Watterson*, 987 F.2d at 3 (citing Fed. R. Civ. P. 12(b)(6)). As the parties acknowledge, this rule has exceptions for "documents the authenticity of which are not disputed by the parties … for documents central to plaintiffs' claims; or for documents sufficiently referred to in the complaint." *Id.*

The seven sample health plans, attached as Exhibit A to Avital Chatto's Declaration, "relate to numerous benefit claims at issue in this action."[1] Abira now argues that it "was not provided copies of the plan documents at prior stages of the proceedings or while making claims to BCBSRI."[2] ECF No. 18 at 10. It further asserts that the sample plans are "portions," but fails to describe what is omitted from any of the seven plans. *Id.* On the other hand, the Chatto Declaration asserts that

---

[1] At the hearing, counsel for BCBSRI explained that the sample plans come from Abira's claim spreadsheet that is attached as Exhibit 1 to the Complaint. The Chatto Declaration confirms this and lists that the seven samples are from the following lines in Exhibit 1 to the Complaint: a) Lines 480–81, b) Line 601, c) Line 571, d) Line 595, e) Line 596, f) Line 123, g) Line 144. ECF No. 16-1 ¶ 6.

[2] This argument is ironic because the Court asked Abira and BCBSRI to work together to produce the plans after receiving BCBSRI's first motion to dismiss. Abira failed to engage in that process with BCBSRI, but now seeks to use its inaction as a shield to this motion.

"Exhibit A are true and correct copies of seven (7) health plans." ECF No. 16-1 ¶ 7. Abira does not challenge the authenticity of the health plans, nor do they argue the plans are not central to their claims or that the plans are not sufficiently referred to throughout the Complaint. The *Watterson* exceptions could therefore apply to the sample health plans in this action. *See* 987 F.2d at 3.

That said, the Court is disinclined to consider the sample plans. While the Chatto Declaration explains that "all health plans insured or administered by BCBSRI from January 1, 2016 to December 31, 2020, included provisions similar to those in the attached health plans," ECF No. 16-1 ¶ 7, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court must accept allegations as true and construe them in the light most favorable to the plaintiff. *See Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). Therefore, the Court cannot, at this stage, assume that every health plan is similar to the sample plans provided by BCBSRI.[3]

## B. ERISA Claim

BCBSRI argues that, absent the contract or a contract provision that is alleged to have been breached, it is impossible to determine whether a payment obligation existed under the contract or whether the plans are governed by ERISA. ECF No. 16 at 11–13. In defending the sufficiency of its Complaint, Abira argues that it "should not be held to an excessively burdensome pleading standard that requires it to identify particular plan provisions in ERISA context." ECF No. 18 at 19.

---

[3] Since the Court will not rely on the sample health plans, it will not analyze if Plaintiff's claims are barred by the four-year contractual limitation period or by anti-assignment provisions, and will move on to the five claims presented by Abira.

Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The "fundamental purpose" of that pleading rule "is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Martinez v. Petrenko*, 792 F.3d 173, 179 (1st Cir. 2015) (quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)). That pleading requirement must be interpreted alongside ERISA's civil enforcement provision. *See* 29 U.S.C. § 1132(a)(1)(B). ERISA's civil enforcement provision authorizes suit by a plan participant "to recover the benefits *due to him under the term of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). As another judge in this district has recognized, "'[a]n action brought pursuant to this provision, essentially, is a breach of contract action, and in determining whether there has been a breach, *the terms of the plan* must be interpreted under principles of federal substantive law.'" *Corsini v. United Healthcare Services, Inc.*, 145 F. Supp. 2d 184, 189 (D.R.I. 2001) (quoting *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir. 1989)) (emphasis added).

In the context of an ERISA case, courts in other jurisdictions have found a plaintiff must allege facts that "established (1) the existence of an ERISA plan as well as (2) the provisions of the plan that entitle it to benefits." *Reiten v. Blue Cross of Cal.*, No 2:19-cv-05274-AB-AFMx, 2020 WL 1032371, at *2 (C.D. Cal. Jan. 23, 2020) (quoting *Forest Ambulatory Surgical Assocs. v. United HealthCare Ins. Co.*, No. 10-

cv-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011)).  Failure to identify the controlling ERISA plans makes a complaint unclear and ambiguous.  *Forest Ambulatory*, 2011 WL 2748724, at *5.  More recently, in the Middle District of Florida, a District Judge found that a similar ERISA claim also filed by Abira was insufficiently plead, providing the following explanation:

> Although attempting to sue under ERISA, Abira provides no specific information.  Abira does not identify how many of its patients participated in ERISA plans (or even that any did), the terms and conditions of any ERISA plan, what benefits are allegedly due under an ERISA plan, or whether Abira exhausted administrative remedies. Abira alleges only that its patients assigned their unspecified benefits to Abira via a standard form assignment of benefit clause and that Blue Cross has violated ERISA by failing to make payments of benefits to [Abira], as required under the terms and conditions of the Plan, made claims determinations in an arbitrary fashion, and failed to provide a full and fair review to [Abira] for the claims assigned to [Abira]. Without ERISA-specific information, Abira fails to state a claim on which relief can be granted.

*Abira Med. Labs., LLC v. Blue Cross Blue Shield of Fla., Inc.*, No. 3:23-cv-1092-TJC-SJH, 2024 WL 3965733, at * 5 (M.D. Fla. Aug. 28, 2024) (cleaned up).[4]

In *Glendale Outpatient Surgery Center v. United Healthcare Services, Inc.,* the Ninth Circuit affirmed a district court's sua sponte dismissal of an ERISA claim. 805 Fed. Appx. 530, 531 (9th Cir. 2020).  That Court found that the plaintiff's complaint failed to state a claim under the ERISA statute because it did not identify "any ERISA plan, apart from vague references to anonymous patients who alleged

---

[4] This Plaintiff has filed over 100 similar complaints across the country.  *See* ECF No. 16 at 1 n.1 (listing cases filed by Abira across the country).

assigned rights to [plaintiff]" or "any plan terms that specify benefits that the defendants were obligated to pay but failed to pay." *Id.*

Even so, some courts have been sympathetic to the concern raised by Abira, specifically its claim that they have no access to any health plans prior to filing their Complaint. ECF No. 18 at 16–18. For example, in *Innova Hospital San Antonio, Ltd. Partnership v. Blue Cross and Blue Shield of Georgia, et al.,* the Fifth Circuit allowed a plaintiff's amended complaint to survive a motion to dismiss where the amended complaint failed to specify language in any ERISA plan entitling it to benefits. 892 F.3d 719, 724 (5th Cir. 2018). There, the Fifth Circuit found "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Id.* at 728 ("No matter how clever or diligent, ERISA plaintiffs generally lack inside information necessary to make out their claims in detail") (quoting *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 598 (8th Cir. 2009)). The Fifth Circuit reasoned that "[a]lleging improper reimbursement based on representative plan provisions may be sufficient to show plausibility under *Twombly* and *Iqbal* when there are enough other factual allegations" that would allow a court to draw a reasonable inference that the defendant is liable. *Id.* at 729. The plaintiff, in their amended complaint, "outlined its efforts to obtain plan documents from the insurers," which that court found sufficient to survive a motion to dismiss. *Id.* at 725, 730-31.

10

Here, Abira's Complaint contains only one general factual allegation that suggests the existence of an ERISA plan. Paragraph 19 states, "[u]pon information and belief, Defendants' [insureds] obtained insurance policies through the issuance of the Defendants' subscriber/member's Employer obtaining a policy of group health insurance." ECF No. 1 ¶ 19. It then alleges that "[s]aid policy is an employee benefit plan that is regulated by Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*" *Id.* ¶ 20. Based on the Complaint, the Court cannot ascertain "the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Reiten*, 2020 WL 1032371, at *2. The allegations here are similar to the plaintiffs' claim in *Glendale Outpatient Surgery Center* where the motion to dismiss was granted because it had not identified any ERISA plan "apart from vague references to anonymous patients who alleged assigned rights to" Abira. 805 Fed. Appx. at 531.

Combining the language of 29 U.S.C. § 1132(a)(1)(B) with the language in *Corsini* and *Burnham*, this Court concludes that Abira's ERISA claim must be dismissed. First, the statute repeatedly uses the language "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Consistent with *Corsini* and *Burnham*, this Court views the ERISA claim as "essentially, [] a breach of contract action," leading it to conclude that Abira must have pled the existence of a contract or a specific contract term that had been breached and entitles them to payment. *Corsini*, 145 F. Supp. 2d at 189 (quoting *Burnham*, 873 F.2d at 489). Further, many of the defects explained

by the judge in the Middle District of Florida in a very similar case are present in the Complaint before this Court. *See Abira Med. Labs., LLC*, 2024 WL 3965733, at *5.

The fact that Abira claims it cannot access the Plans without proceeding to discovery is unconvincing. First, Abira received assignments of benefits that "assign[ed] all rights and benefits under [the] plan," ECF No. 1 ¶ 10, which presumably includes the right to access the patients' plan. Second, this Court views Abira's predicament as self-inflicted because it never sought to secure the Plans from their patients upon receiving the requisitions of laboratory testing, failed to plead any attempts to retrieve Plan documents directly from BCBSRI, and refused to engage in the process outlined by this Court—designed to have the Plans produced—after BCBSRI filed its initial motion to dismiss. Based on the information before this Court, Abira does not appear to have made any inquiry to BCBSRI to figure out if the assignments of benefits were valid or if their laboratory services were compensable under their patients' Plans.

As a result, the Court finds that Count I of Abira's Complaint fails to state a claim upon which relief can be granted.

## C.   Abira's State Law Claims

Abira also asserts various state-law claims; Count II breach of third-party beneficiary contract, Count III breach of third-party bad faith claims, Count IV unjust enrichment, and Count V, negligence. BCBSRI asserts that each of the state-law claims fails. The Court will address each claim in turn.

1.    **Breach of a Third-Party Beneficiary Contract**

Abira asserts that it successfully states a claim for breach of third-party beneficiary contract because it did not enter into an agreement with BCBSRI and has "pleaded and argued that it is the intended beneficiary of the Defendant's insureds plans." ECF No. 18 at 21.   BCBSRI counters that Abira fails to allege any Plan language, or any other representation by BCBSRI, that suggests either party to the Plan—the insured and the insurer—intended for Abira to benefit.  ECF No. 16 at 15.

Under Rhode Island law, "[i]n order to prevail on a contract claim as a third-party beneficiary, the claimant must prove that he or she is an intended beneficiary of the contract." *Glassie v. Doucette*, 157 A.3d 1092, 1097 (R.I. 2017) (citing *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009)).  The most crucial factor of this analysis "is the intent of the parties."  "The language employed by the parties to a contract is the best expression of their contractual intent".  *Cathay*, 962 A.2d at 746.  "[O]nly intended, and not incidental, third-party beneficiaries can maintain an action for damages resulting from a breach of contract between two other contracting parties." *Forcier v. Cardello*, 173 B.R. 973, 984 (D.R.I. 1994) (citing *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990)).  "[A] 'promisor's mere awareness that someone other than the promisee may derive a benefit from the promisor's performance under the contract is insufficient to cloak that third-party with the mantle of intended beneficiary.'" *Forcier*, 173 B.R. at 986 (quoting *R.I. Depositor's Economic Protection Corp., et al. v. Ernst & Young, et al.*, C.A. 92-1120 (R.I. Super. Ct. Mar. 11, 1994)).

For Abira's breach of third-party beneficiary contract claim to proceed, the Complaint must contain facts that suggest it was an intended beneficiary of the contract between BCBSRI and their insureds. *Id.* Absent the Plan, the Court cannot glean the parties' intent from the contract and is left with just the allegations in the Complaint and the attached Exhibit 1. Exhibit 1 identifies the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, and the date of service. The Complaint also contains specific language of the assignment executed between the insureds/claimants and Abira, but nothing that reflects the intent of the named parties in this suit. *See* ECF No. 1 ¶¶ 9–10, 12.

With no contractual language or representation by BCBSRI or their members that the Plans were "directly and unequivocally" meant to benefit Abira, the Court cannot allow this claim to proceed. *See Werner v. Stonebridge Life Ins. Co.*, C.A. No. 07-82S, 2007 WL 2412255, at *4 (D.R.I. June 19, 2007) (stating also that "Rhode Island adheres to the Restatement (Second) of Contracts rule concerning third-party beneficiaries, which requires that the parties directly and unequivocally intend to benefit a third-party in order for that third-party to be considered an intended beneficiary") (citing *Finch v. R.I. Grocer's Ass'n*, 93 R.I. 323, 330 (1961)). Thus, Abira's Complaint fails to plausibly plead that it is an intended third-party beneficiary of the contract between BCBSRI and their insured and Count II is dismissed.

### 2.    Breach of Third-Party Bad Faith Claim

The allegations in Count III of the Complaint are unclear. Abira weaves allegations that BCBSRI breached the covenant of good faith and fair dealing that is

implied in every contract with a common law bad faith claim. Abira begins by alleging that BCBSRI breached the covenant of good faith and fair dealing, but then states that it "brings this common law bad faith claim directly against Defendant." ECF No. 1 ¶¶ 44–45. To the extent Abira asserts a breach of the implied covenant of good faith and fair dealing, the Rhode Island Supreme Court has held that "a claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract." *Transamerica Life Ins. Co., v. Caramadre*, C.A. NO. 09-470-S, 2017 WL 752145, at *6 (D.R.I. Feb. 27, 2017) (quoting *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015)).

Since Abira's claim for a breach of the implied covenant of good faith and fair dealing cannot stand alone as an independent claim, it can only survive if there are plausible allegations that there was a contract between the parties and that BCBSRI breached the covenant of good faith and fair dealing that is implied in that contract. However, since this Court is dismissing Abira's breach of third-party beneficiary contract claim, it follows that the claim for breach of the implied covenant of good faith and fair dealing will also be dismissed.

Common law bad faith, which is analyzed under the same rubric as statutory bad faith under Rhode Island law, "is established when the proof demonstrates that the insurer denied coverage or refused payment without a reasonable basis in fact or law for the denial." *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1002, 1004, 1010 (R.I. 2002). Abira alleges that BCBSRI "has unreasonably denied, refused its claims and/or partially paid its claims" and that claims were not promptly adjudicated. *See*

ECF No. 1 ¶¶ 2, 4, 14, 15, 28, 46. Still, the Supreme Court of Rhode Island has held that "Blue Cross is a nonprofit hospital service corporation within the meaning of [R.I. Gen. Laws] § 27-19-1 and a nonprofit medical service corporation within the meaning of § 27-20-1. It is not an insurer within the meaning of § 9-1-33." *See Richard v. Blue Cross & Blue Shield*, 604 A.2d 1260, 1262 (R.I. 1992). Therefore, the Court must dismiss the common law bad faith claim.

### 3. Quantum Meruit/Unjust Enrichment Claim

Count IV of the Complaint alleges unjust enrichment/quantum meruit. These are distinct causes of action, but under R.I. law the elements are the same. *Prime Healthcare Servs.-Landmark, LLC v. CIGNA Health and Life Ins. Co.*, 2024 WL 361368, at *4-5 (D.R.I. Jan. 31, 2024) (citing *S. Cnty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 211 (R.I. 2015)). To sustain one of these claims, the Plaintiff must show that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof." *Id.* at *4 (quoting *Process Eng'rs & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1053 (R.I. 2014)).

The Rhode Island Supreme Court has discussed the differences between unjust enrichment and quantum meruit, and this claim fits more into the quantum meruit realm. *See IDC Clambakes, Inc. v. Carney as Tr. of Goat Island Realty Trust*, 246 A.3d 927, 933 (R.I. 2021). That Court has explained "[a]n action for quantum meruit 'permits recovery of damages in an amount considered reasonable to compensate a

16

person who has rendered services in a quasi-contractual relationship.'" *Id.* (quoting *S. Cnty. Post & Beam*, 116 A.3d at 210). It then explained more about quantum meruit and unjust enrichment:

> While the term 'unjustly enriched' is included as a requirement for recovery under a quantum meruit theory, we have described the nuanced distinction between unjust enrichment and quantum meruit as follows: While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered. Generally, quantum meruit applies *in a situation in which the plaintiff has provided services to the defendant* for which the defendant has refused to pay. We have stated that [t]he third prong of the analysis is the most important—namely, that the recipient accepted the benefit under such circumstances that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof. [T]he court must look at the equities of each case and decide whether it would be unjust for a party to retain the benefit conferred upon it without paying the value of such benefit. In determining what is, and what is not, an unjust result, the hearing justice must examine the facts of the particular case and balance the equities.

*Id.* (quoting *S. Cnty. Post & Beam*, 116 A.3d at 210) (internal citations and quotations omitted).

Abira's claim for quantum meruit fails because it did not confer a direct benefit upon BCBSRI as articulated by the Rhode Island Supreme Court in *IDC Clambakes, Inc. v. Carney as Trustee of Goat Island Realty Trust*. Abira's theory of recovery is that it "conferred a benefit upon Defendant's subscribers and/or members by providing a medical service that it was entitled to under the Defendant's plan document/insurance policy and, therefore, upon the Defendant." ECF No. 1 ¶ 49. The Rhode Island Supreme Court's explanation that quantum meruit applies only "*in a situation in which the plaintiff has provided services to the defendant* for which the

defendant has refused to pay" is clear. The benefit conferred must be directly conferred upon a defendant, which is not the case here. Therefore, Abira's claim for quantum meruit is dismissed.

Even reviewing Count IV under a theory of unjust enrichment, the result is the same. In *IDC Clambakes*, the Court reiterated that "[u]njust enrichment is 'the retention of a benefit conferred by another, who offered no compensation, in circumstances where compensation is reasonably expected.'" 246 A.3d at 933 (quoting *S. Cnty. Post & Beam*, 116 A.3d at 210). The Court explained "the fact that a recipient has obtained a benefit without paying for it does not itself establish that the recipient has been unjustly enriched … [r]ather, unjust enrichment occurs 'when a benefit is conferred deliberately but without a contract.'" *Id.* (first quoting Restatement (Third) *Restitution and Unjust Enrichment* § 2(1) (2011) then *S. Cnty. Post & Beam*, 116 A.3d at 210).

Abira claims "Defendant has enriched itself at Plaintiff's expense by failing and refusing to compensate Plaintiff for providing Laboratory Testing Services to Defendant's subscribers and/or members." ECF No. 1 ¶ 51. This cannot be reasonably interpreted as deliberately conferring a benefit to BCBSRI, and Abira cites no authority recognizing that it should be. The outcome would be different if the allegations supported that BCBSRI instructed Abira to perform testing on their insured, but those are not the allegations in the Complaint.

Thus, Abira's claim for quantum meruit/unjust enrichment is dismissed.

18

4.    **Negligence Claim**

The last argument BCBSRI asserts is that Abira's negligence claim, Count V, is barred by the economic loss doctrine. The Rhode Island Supreme Court discussed the economic loss doctrine at length in *Franklin Grove Corp. v. Drexel*, where it stated:

> The economic loss doctrine provides that a plaintiff is precluded from recovering purely economic losses in a negligence cause of action. In other words, under this doctrine, a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage. This Court has looked to the Supreme Court of Washington for guidance on this issue: [w]hen parties have contracted to protect against potential economic liability, as is the case in the construction industry, contract principles override tort principles and, thus, purely economic damages are not recoverable.

> Our rationale for abiding by the economic loss doctrine centers on the notion that commercial transactions are more appropriately suited to resolution through the law of contract, than through the law of tort."

936 A.2d 1272, 1275 (R.I. 2007) (internal citations omitted).

In arguing against application of the economic loss doctrine to this case, Abira contends that it "steps into the shoes of Defendant's insureds due to the assignments … [and that] Plaintiff should be able to pursue its claims" if no contract is found to exist. ECF No. 18 at 25. These arguments are weak. First, Abira has not alleged that it suffered any personal injury or property damage. Second, Abira has not alleged any legal duty owed to it by BCBSRI, except for one that would arise from the Plans. Therefore, Abira's negligence claim is dismissed.

## IV.    CONCLUSION

In conclusion, the Court GRANTS BCBSRI's Amended Motion to Dismiss (ECF No. 16) in its entirety.  Final Judgment shall enter in BCBSRI's favor.


IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

02/09/2026

20